**NOT FOR PUBLICATION**                    **CASE CLOSED**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARK ROSS, | Civil Action No. 08-5282(SDW) |
| Plaintiff, | |
| v. | |
| MICHAEL J. ASTRUE, COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | **OPINION** |
| Defendant. | March 8, 2010 |

**Wigenton**, **District Judge**

Before the Court is Mark Ross's appeal of the final decision of the Commissioner of Social Security that he was not eligible for Disability Insurance Benefits and Supplemental Security Income Benefits under, respectively, Titles II and XVI of the Social Security Act, 42 §§ U.S.C. 401–33, 1601-1637. This appeal is decided without oral argument as permitted by Local Civil Rule 9.1(b). For the reasons set forth below, the Court affirms the Commissioner's decision.

## I.    Jurisdiction and Venue

The Court has subject matter jurisdiction pursuant to 42 U.S.C. § 405(g). Venue is proper under 28 U.S.C. § 1391(b).

## II.    Factual Background

The procedural history of the case is as follows:

On October 26, 2001, the Administrative Law Judge, Dennis O'Leary, denied Mr. Ross's claim. (Compl. 5.) The Appeals Council, Office of Hearings and Appeals, denied

Mr. Ross's request for review on September 26, 2003.  (Compl. 6.)  This Court issued a Consent Order to Remand on March 17, 2005.  (Tr. 263.)  ALJ O'Leary again denied Mr. Ross's disability claim on November 14, 2005.  (Tr. 272.)

The claimant, Mark Ross, submits the following facts:

Mr. Ross was last insured in the Social Security system on December 31, 2002, when he was 44 years old.  (Pl. 3.)  Until 1993, he worked as a forklift operator for Annheuser-Busch.  (Pl. 3; Tr. 370.)  Mr. Ross also worked as a substitute teacher for classes of special needs students with behavioral problems until 1997, when an undiagnosed illness made him too ill to work.  (Pl. 4.)  In January 2000, Mr. Ross attempted to return to work at a school but fell into a diabetic coma and was assaulted by some students.  (Pl. 4; Tr. 244-245.)

Following this incident, Mr. Ross was diagnosed with diabetic ketoacidosis, uncontrolled diabetes, increased anion gap, metabolic acidosis, nephropathy, azotemia, and diabetic neuropathy at Bayonne Hospital.  (Pl. 4; Tr. 99.)

On a visit to Bayonne Hospital in December of 2000, Mr. Ross was diagnosed with a sprain of the right shoulder girdle, and post-traumatic tendinitis.  An MRI taken at that time showed "partial thickness tear/tendonitis involving the rotator cuff with anterior leading edge of the supraspinatus tendon most involved." (Pl. 4; Tr. 159.)

In December of 2001, Dr. Vinod Kapoor found that Mr. Ross demonstrated reduced grip strength, tenderness, redness, swelling, loss of sensation, and loss of coordination in the right hand due to peripheral neuropathy.  (Pl 4; Tr. 198.)  A test of motor nerve conduction velocities on Mr. Ross showed abnormalities that were suggestive of ulnar nerve neuropathy.  (Pl. 4; Tr. 4.)  An MRI taken on December 19,

2001, showed mild spinal stenosis secondary to a bulging disc at C5-6, with foraminal narrowing, and right paracentral disc herniation at C6-7, with compression of the right lateral recess and narrowing of the right neural foramen.  (Pl. 5; Tr. 215.)

Dr. Howard Levine was Mr. Ross's primary care physician from April 2001 to November 2002, and from 2004 to 2005.  (Pl. 5.)  Dr. Levine observed that Mr. Ross had difficulty standing, walking, climbing, stooping, and bending.  (Pl. 5; Tr. 176.)  He stated that Mr. Ross should keep his legs elevated above hip height when seated.  (Pl. 5; Tr. 173.)  Dr. Levine also observed that Mr. Ross had fungal infections on both feet.  (Pl. 6; Tr. 316.)

Mr. Ross testified that his subjective symptoms included tingling in the fingers, difficulty coordinating his hand movements, and pain in his right shoulder, arm, and hand.  He also testified that he could not write with either hand (Pl. 5; Tr. 361) and that he could not use a computer (Pl. 5; Tr. 234).

The Commissioner of Social Security submits the following facts:

Mr. Ross testified at the most recent hearing that his daily activities included dusting, making beds, and using a remote vacuum cleaner.  (Def. 3; Tr. 372-373.)

An electrocardiogram taken while Mr. Ross was in Bayonne Hospital in January 2000, showed normal sinus rhythm, sinus tachycardia, and non-specific ST-T wave changes.  (Def. 4; Tr. 98.)

Dr. Francky Merlin examined Mr. Ross at the Commissioner's request on April 12, 2000 and February 15, 2001.  (Def. 5; Tr. 128-130.)  The report by Dr. Merlin on the 2001 examination states that Mr. Ross denied any ophthalmologic, cardiac, renal, or neurologic involvement.  (Def. 5; Tr. 128.)  Dr. Merlin diagnosed Mr. Ross with diabetes

mellitus, hypertension, fairly controlled, fungal nail infection, diabetic neuropathy, arthralgia of the right shoulder, and morbid obesity.  (Tr. 123, 129-30.)  Dr. Merlin also found that Mr. Ross had motor strength of 2/5 in the right hand and 5/5 in the left hand and that Mr. Ross did not suffer from edema.  (Def 5; Tr. 122.)  Dr. Merlin found that Mr. Ross was "able to sit, stand, walk, hear, speak, travel, or handle objects but should not lift or carry heavy objects using the right arm."  (Tr. 123.)

Dr. Levine completed two questionnaires on September 19, 2001.  (Def. 8; Tr. 170-75.)  In each, he indicated that Mr. Ross could walk for less than one block, could sit for only five to ten minutes before needing to stand, and could stand for only fifteen minutes before needing to sit.  (Def. 8; Tr. 172-73, 178-79.)  Dr. Levine indicated in both questionnaires that Mr. Ross could walk, sit, or stand for only two hours in an eight-hour day.  (Def. 8; Tr. 172-73, 180.)  Dr. Levine also indicated that Mr. Ross should never lift any weight and that his symptoms would constantly interfere with his concentration. (Def. 10; Tr. 192-93.)

Dr. Kapoor's December 4, 2001 examination of Mr. Ross revealed that Mr. Ross had a gait within normal limits.  (Def. 9; Tr. 212.)  His pupils were equal and reactive. (*Id*.)  He had full muscle strength and tone, and he could move all extremities equally. (*Id*.)  On a questionnaire, Dr. Kapoor stated that Mr. Ross should never carry any weight, that he had limitations in using his fingers and hands for making fine finger manipulations, and that he had limitations in grasping, turning, and twisting objects on his right side.  (Def. 10; Tr. 200.)

On September 29, 2005, at the most recent administrative hearing, Dr. Martin Fechner, a medical expert, identified Mr. Ross's impairments as including diabetes,

obesity, tendinitis, and carpel tunnel syndrome of the right wrist.  (Def. 11; Tr. 381-83.)

Dr. Fechner testified that Mr. Ross was capable of light work, that he could walk and

stand for an aggregate of six hours in an eight-hour day, and that he should have no

limitation in sitting.  (Def. 11; Tr. 381-83.)  He also stated that, using both arms together,

Mr. Ross could lift twenty pounds occasionally and ten pounds frequently.  (Def. 11; Tr.

384.)

Rocco Meola, a vocational expert, also testified at this hearing.  (Def. 3; Tr. 386-

94.)  He stated that Mr. Ross's work as a substitute teacher for special needs students

constituted light, semi-skilled work that did not require continuous finger manipulations.

(Def 6; Tr. 387.)  In filling out the "Adult Disability Report" as part of his claim, Mr.

Ross wrote that he taught "all subjects [and] all grades."  (Def. 2; Tr. 55.)  Mr. Meola

indicated that a person with Mr. Ross's age, education, and work history who was limited

to light work and whose dominant right hand was restricted from continuous and

repetitive fingering manipulations could work as a substitute teacher.  (Def. 4; Tr. 387-

388.)

## III.   Discussion

### A.  Standard of Judicial Review

The district court must affirm the Commissioner's decision if it is supported by

substantial evidence.  *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986); *see* 42 U.S.C. §

405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401

(1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  Substantial

evidence is "more than a mere scintilla of evidence but may be less than a

preponderance." *Stunkard v. Sec'y of Health & Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988) (quoting *Dobrowolsky v. Califano*, 606 F.2d 403, 406 (3d Cir. 1979)).

That said, no quantity of evidence will be deemed substantial if it is overwhelmed by other evidence in the record. *Brewster v. Heckler*, 786 F.2d 581, 584 (3d Cir. 1986) (citing *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). As such, the reviewing court must consider the totality of the evidence and then determine whether there is substantial evidence to support the Commissioner's decision. *See generally Taybron v. Harris*, 667 F.2d 412, 413 (3d Cir. 1981). But the reviewing court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992) (citing *Early v. Heckler*, 743 F.2d 1002, 1007 (3d Cir. 1984)).

In determining whether there is substantial evidence to support the Commissioner's decision, the reviewing court must consider the: "(1) objective medical facts; (2) diagnoses and medical opinions of examining physicians; (3) subjective evidence of pain and disability as described by plaintiff and corroborated by others who have observed him; and (4) plaintiff's age, educational background and work history." *Curtin v. Harris*, 508 F. Supp. 791, 793 (D.N.J. 1981) (citing *Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972)).

Issues which are dispositive in deciding the claimant's eligibility for disability benefits will be decided by the Commissioner based on his role as an adjudicator, rather than based on a physician's medical opinion. Soc. Sec. Rule 96-5p (1996); 20 C.F.R. § 416.927(e). The ALJ, who is an agent of the Commissioner, has discretion "to evaluate the credibility of a claimant and to arrive at an independent judgment in light of medical

findings and other evidence regarding the true extent of the pain alleged by the claimant." *LaCorte v. Bowen*, 678 F. Supp. 80, 83 (D.N.J. 1988) (quoting *Brown v. Schweiker*, 562 F. Supp. 284, 287 (E.D. Pa. 1983)).  In addressing a claimant's subjective symptoms, the Commissioner and his agents are also entitled to consider the claimant's efforts to work. 20 C.F.R. §§ 404.1529, 416.9294.

When a medical opinion is consistent with other substantial evidence, it is given controlling weight.  20 C.F.R. §§ 416.927(c)(1), (d)(2).  However, if a medical opinion is either inconsistent with other evidence in the case or is internally inconsistent, the Commissioner will "weigh all of the evidence [to] decide whether [the claimant is] disabled."  20 C.F.R. § 416.927(c)(2).  Where there is conflicting probative evidence in the record or where an ALJ rejects some relevant evidence, the ALJ must explain how she resolved the conflict or why she rejected the evidence.  *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (citing *Kennedy v. Richardson*, 454 F.2d 376 (3d Cir. 1972)). When faced with conflicting medical evidence, an ALJ should consider "[f]orm reports in which a physician's obligation is only to check a box or fill in a blank [to be] weak evidence at best."  *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993).

The district court "cannot exercise [its] duty of review unless [it is] advised of the considerations underlying the action under review."  *Cotter*, 642 F.2d 700, 705 n.7. Therefore, "the grounds upon which the administrative agency acted [must] be clearly disclosed and adequately sustained."  642 F.2d at 705 (citation omitted).  Each finding in the evaluation process must be supported by reasoned analysis and "where appropriate, should include a statement of subordinate factual foundations on which ultimate factual

conclusions are based, so that a reviewing court may know that basis for the decision." *Id.*

### B.  Standard for Determining Eligibility of Disability Benefits

A claimant may be entitled to benefits under the Social Security Act if she demonstrates her inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987).   A physical or mental disabling impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."   42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).   An individual will be deemed disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."   42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process to determine whether a claimant is "disabled" within the meaning of the Act.  *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004); 20 C.F.R. §§ 404.1520(a), 416.920(a).   The claimant bears the burden of proof in the first four steps.  The burden then shifts to the Commissioner at the fifth and final step.  *Jones*, 364 F.3d at 503 (citing *Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999)).

At step one, the Commissioner determines whether the claimant is engaging in work activity that is both "substantial" (work activity that involves doing significant physical or mental activities) and "gainful" (work that is usually done for pay or profit, whether or not a profit is realized).  20 C.F.R. §§ 404.1572(a), (b), 416.972(a), (b).  If the claimant is engaging in substantial gainful work activity, she is not disabled and the sequential evaluation terminates at step one with such a finding.  *Id.*

If not, at step two, the Commissioner determines whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that are "severe" when taken together.  20 C.F.R. §§ 404.1520(c), 416.920(c).  An impairment is severe if it significantly limits a claimant's ability to do basic work activities.  20 C.F.R. § 404.1521.  Basic work activities include "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling," as well as perceptual, mental, and behavioral activities.  20 C.F.R. § 404.1521(b).  If the claimant fails to establish a severe medically determinable impairment or combination of impairments, she is not disabled and the sequential evaluation terminates at step two with such a finding.  *Id.*  If the claimant establishes that she suffers from any severe medically determinable impairment or combination of impairments, then the analysis proceeds to step three.  *Id.*  As such, where the Commissioner finds that the claimant suffers from even one severe impairment, any failure on the Commissioner's part to identify other conditions as being severe does not compromise the integrity of the analysis. *Salles v. Comm'r of Social Security*, 229 Fed. Appx. 140, 145 n.2 (3d Cir. 2007); *Rivera v. Comm'r of Social Security*, 164 Fed. Appx. 260, 261 n.2 (3d Cir. 2006).

If the claimant establishes a severe medically determinable impairment or combination of impairments, then, at step three, the Commissioner, or his agent, must determine whether such impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926). The ALJ must identify the relevant listed impairments for the purpose of determining whether each of the claimant's impairments match the requirements of a given listing. *Burnett v. Commissioner of SSA*, 220 F.3d 112, 120 (3d Cir. 2000). However, if a claimant does not provide sufficient objective medical evidence to warrant a finding that a particular impairment is severe, then the ALJ is not required to determine whether that impairment renders a claimant disabled *per se* at step three of the analysis. *Sassone v. Comm'r of Soc. Sec.*, 165 Fed. Appx. 954, 959 (3rd Cir. 2006). Additionally, an ALJ's determination that the claimant has no impairment or combination of impairments that are equivalent to a listing may be supported by substantial evidence even where the ALJ does not describe which sections of the Listing of Impairments he compared the claimant's impairments to. *See Arroyo v. Comm'r of Soc. Sec.*, 82 Fed. Appx. 765, 768 (3d. Cir. 2003). If the claimant's impairment or combination of impairments meets or medically equals the criteria listed and meets the duration requirement,[1] then the claimant is disabled and the sequential evaluation terminates at step three with such a finding. 20 C.F.R. § 404.1520.

If not, at step four, the Commissioner determines the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). A claimant's RFC

---

[1] 20 C.F.R. §§ 404.1509, 416.909.

is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments.  In making this determination, the Commissioner must consider all of the claimant's impairments, including impairments that are not severe.  *Id.* Next, the Commissioner must determine whether the claimant has the RFC to perform her past relevant work ("PRW").  The term PRW means work performed within the last fifteen years or fifteen years prior to the date that disability must be established.  Further, the work must have lasted long enough for the claimant to learn to do the job and have been a substantial gainful activity.  20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965.  If the claimant has the RFC to do her PRW, the claimant is not disabled and the sequential evaluation terminates at step four with such a finding.  *Id.*

If not, at step five, the Commissioner determines whether the claimant is able to do any other work considering her RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 416.920(g).  If the claimant is able to do other work, she is not disabled. However, in order to support a finding that the claimant is not disabled at this step, the Social Security Administration must provide evidence that demonstrates that other work exists in significant numbers in the national economy, and that the claimant can do such work given his RFC, age, education, and work experience.  20 C.F.R. §§ 404.1512(g), 404.1560(c), 416.912(g), 416.960(c); *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986).  If the claimant is not able to do other work and meets the duration requirement, he is disabled.

### C.  Mark Ross's Eligibility for Disability Benefits

Here, at step one, the ALJ determined that Mr. Ross had not "engaged in any substantial gainful activity at any time since his alleged onset date."  (Tr. 264.)  The ALJ

therefore proceeded to step two.  That Mr. Ross engaged in substantial gainful activity is not disputed.  The ALJ's decision is also supported by substantial evidence in the record.

At step two, the ALJ determined that, "[t]he evidence supports a finding that Mr. Ross has diabetes, tendinitis of the right elbow and right hand, a rotator cuff injury and a history of hypertension, impairments which cause significant vocationally relevant limitations."  (Tr. 264.)  Thus, under *Salles* and *Rivera*, the analysis proceeds to step three regardless of whether or not there were other severe impairments.  229 Fed. Appx. at 145 n.2; 164 Fed. Appx. at 261 n.2.

At step three of the analysis, the ALJ concluded that Mr. Ross was not disabled *per se*.  In conducting his analysis, the ALJ did not consider any of Mr. Ross's subjective complaints to be credible.  (Tr. 268.)  The ALJ considered whether Mr. Ross was impaired within the meaning of Listing of Impairments.  In particular, the ALJ's analysis referred to three sections in the Listings: "Soft tissue injuries," § 1.13, "Ischemic heart disease," § 4.04, and "Diabetes mellitus," § 9.08.  (Tr. 264-65.)  The ALJ did not analyze Mr. Ross's impairments under § 8.00 of the listings, "Skin Disorders."  The ALJ also did not find that Mr. Ross suffered from any impairment or combination of impairments equivalent to a listed impairment.

The ALJ determined that, "[t]he claimant's symptoms concerning his impairments and their impact on his ability to work are not entirely credible . . . ."  (Tr. 268.)  The ALJ relies on three points to support his position.  First, the ALJ notes that the daily activities that Mr. Ross admitted to engaging in at the most recent hearing contradict the medical opinion of Dr. Levine, on which Mr. Ross relies.  (*Id*.)  Mr. Ross stated that he engaged in dusting, making beds, and vacuuming.  (Tr. 372-373.)  A reasonable person could believe

that these activities would involve the kind of standing, walking, climbing, stooping, and bending that Dr. Levine said that Mr. Ross had difficulty engaging in.  (Pl. 5; Tr. 176.) Second, the ALJ states that Mr. Ross's assertion that, "he lost consciousness and awakened to find that he was naked and tied up by students . . . strains credulity."  (Tr. 268.)  The ALJ has the discretion to evaluate the credibility of a claimant in this way. *LaCorte*, ALJ 678 F. Supp. at 83 (quoting *Brown v. Schweiker*, 562 F. Supp. at 287.). Third, the ALJ noted that Mr. Ross has not established that he made an effort to work between 1997 and the time in 2001 when Mr. Ross asserts the onset of his impairments occurred.  Under 20 C.F.R. §§ 404.1529 and 416.9294, the ALJ was entitled to consider the evidence provided by Mr. Ross that he made efforts to work.  Mr. Ross provided no such evidence.  Thus, the ALJ satisfied his burden of adequately explaining the reason why he gave Mr. Ross's subjective symptoms little weight.  *Cotter*, 642 F.2d 706 (citing *Kennedy*, 454 F.2d 376).

With respect to his finding that Mr. Ross was not disabled *per se* by virtue of a soft tissue impairment, the ALJ wrote that Mr. Ross's "alleged musculoskeletal impairments (right torn rotor cuff, tendinitis, of the right elbow and right hand) are not evidenced by the need for a series of staged surgical procedures within twelve months after onset for salvage or restoration of major function of the extremity and such major function was not restored or expected to be restored within 12 months after onset as required by then applicable Section 1.13 of the Listing of Impairments."  (Tr. 265.)  The ALJ supports this conclusion by referring to all the medical evidence in the case and § 1.13 of the Listing of Impairments, which his language parallels.

13

Examining the totality of the evidence, we find no evidence that the soft tissue injuries suffered by Mr. Ross were the kind that called for surgery within 12 months to salvage them or restore major function, as is required by § 1.13 of the Listing of Impairments.  As such, we find that a reasonable person could accept that Mr. Ross's injuries did not meet § 1.13 of the Listing of Impairments.  Thus, the ALJ's determination is based on substantial evidence.

The ALJ wrote, with respect to his finding that Mr. Ross was not disabled *per se* on account of an impairment to his cardiovascular system, "[t]he claimant's hypertensive cardiovascular disease is not manifested by evidence of chronic heart failure, ischemic heart disease, any hypertension related vision complications, impairment of renal function or a central nervous system vascular accident."  (Tr. 264.)  The ALJ supports this statement by referring to all the medical evidence in the case and § 4.04 of the Listing of Impairments.  *Id.*  For a claimant to meet the requirements of § 4.04, he must demonstrate that he suffers from ischemic heart disease characterized by chest pains or pains of cardiac origin.

There is no medical opinion in the record that indicates that Mr. Ross suffered from ischemic heart disease.  A questionnaire completed by Mr. Ross's own physician, Dr. Levine, specifically inquired whether Mr. Ross had signs of organic heart disease. (Tr. 168.)  Dr. Levine did not indicate that Mr. Ross suffered from any such disease.  (Tr. 168.)  Thus, a reasonable mind could find that Mr. Ross was not disabled under § 4.04, so the ALJ's decision to that effect is based on substantial evidence.

With respect to his finding that no impairment to Mr. Ross's endocrine system rendered him disabled *per se*, the ALJ wrote that Mr. Ross's "alleged diabetes is not

14

accompanied by evidence of diabetic neuropathy demonstrated by significant and persistent disorganization of motor functions in the two extremities, diabetic acidosis, and the need for amputation due to diabetes or retinitis proliferans." (Tr. 264.) This statement by the ALJ nearly parallels the section in the Listing of Impairments that pertains to diabetic neuropathy, § 9.08, which the ALJ cites in support of his conclusion. (Tr. 264.) While the ALJ omitted from his restatement of § 9.08 that diabetic neuropathy can also be shown by a gait and station,[2] Dr. Kapoor found that Mr. Ross's gait was within normal limits (Tr. 212.) The ALJ cited all of Mr. Ross's medical records in support of his conclusion that Mr. Ross did not suffer impairments that lead him to be disabled *per se* under § 9.08.

Looking to the evidence of diabetic neuropathy advanced by Mr. Ross, we recognize that he alleges "persistent disorganization of motor function" in one hand. However, § 9.08 requires this impairment to be present in two limbs in order for a claimant to be disabled *per se*. While Mr. Ross was also diagnosed with metabolic acidosis and ketoacidosis, (Tr. 99) he has not provided blood chemical tests that showing that he suffered acidosis at least every two months. Under § 9.08, these tests are required in order to show that a claimant is disabled *per se* on the basis of acidosis. Thus, the ALJ's conclusion that Mr. Ross does not meet this listing is supported by substantial evidence.

The ALJ did not analyze whether Mr. Ross was disabled within the meaning of § 8.00. The fact that the ALJ did not find that the fungus on Mr. Ross's feet qualified as a severe impairment (Tr. 264) does not necessarily mean that Mr. Ross did not provide sufficient evidence to justify such a finding. As was said above, once the ALJ found that

---

[2] Listing of Impairments § 9.08.

Mr. Ross suffered from at least one severe impairment, the ALJ could proceed to step three without finding that any other impairments were severe.  *Salles,* 229 Fed. Appx. 145 n.2; *Rivera*, 164 Fed. Appx. at 261 n.2.  Thus, in order to determine whether the ALJ should have analyzed Mr. Ross's condition under § 8.00 of the Listing of Impairments, the Court must determine whether Mr. Ross provided sufficient evidence that this fungus constituted a severe impairment. *Sassone*, 165 Fed. Appx. at 959.  In doing so, the Court must accept the findings of fact of the ALJ, so long as they are based on substantial evidence.  *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999).

Here, the ALJ found that Mr. Ross "can sit, stand and/or walk for up to six hours."  (Tr. 270.)  The ALJ based his assessment on treatment records from Bayonne Hospital and Dr. Merlin's examination of Mr. Ross.  (Tr. 270.)  On April 12, 2000, Dr. Merlin wrote that Mr. Ross's symptoms were "[r]emarkable for fungus in both feet."  (Tr. 129.)  During that same visit, Dr. Merlin first diagnosed Mr. Ross with onychomycosis, a fungal infection of the toenails.  (Tr. 130.)  He made this diagnosis again on February 15, 2001.  (Tr. 123.)   Dr. Merlin stated after each diagnosis that Mr. Ross was able to sit, stand, and walk.  (Tr. 123, 130.)

The ALJ noted that Dr. Levine diagnosed Mr. Ross with "chronic skin infections (feet)" and "a growth in the arch of his right foot."  (Tr. 266)  On April 25, 2001, Dr. Levine wrote that Mr. Ross "has a growth in the arch of his right foot, which makes it very difficult to stand or walk.  Mark is presently in need of an Orthopedic and Podiatry Surgery."  (Tr. 158.)  On October 12, 2002, Dr. Levine wrote, "has appt podiatry in 1wk for fungal foot infection."  (Tr. 320.)  On July 14, 2004, Dr. Levine wrote in Mr. Ross's records: "[h]as fungus on foot, history of kidney damage w/anti-fungal drug" and "fungal

infection on feet." (Tr. 316.) The ALJ also took note of Dr. Levine's opinion that Mr. Ross could not stand for more than 15 minutes straight and could do so for less than two hours in an eight-hour day. (Tr. 179, 266.)

Ultimately, the ALJ rejected this portion of Dr. Levine's opinion along with much of the rest of Dr. Levine's assessment of Mr. Ross's medical condition. (Tr. 268-269.) The ALJ wrote, "Dr. Levine paints a picture of a person who cannot do anything, a virtual shut-in who can't stand, sit, or walk for more than a few minutes. This estimation is not consistent with the other medical reports in the file, and is not even consistent with the claimant's own testimony as to his daily activities." (Tr. 268.) Specifically, the ALJ relied on Dr. Merlin's opinion that Mr. Ross's only limitation was an inability to lift objects with his right arm. (Tr. 268.) The ALJ also relied on the absence "of continuous medical care in the past four years which would serve to corroborate the opinion of Dr. Levine in December 2001." (Tr. 268.) The ALJ stated that Dr. Levine's April 19, 2001 medical report "merely contains narrative recitations and conclusory statements" and "is not supported by any objective clinical findings/signs or diagnostic test results in support of his opinion." (Tr. 267.) The ALJ was also entitled to give Dr. Levine's assessment of Mr. Ross's capacity to sit, walk, or stand little weight because that assessment is contained in the fill-in-the-blank style forms that are considered "weak evidence at best." *Mason v. Shalala*, 994 F.2d 1058, 41 (3d Cir. 1993.)

As was said above, an impairment is severe if it compromises a claimant's capacity to perform basic work to perform activities like walking, standing, or sitting. 20 C.F.R. § 404.1521. After fully reviewing all the evidence, the Court is convinced that the ALJ sufficiently explained his decision to give greater weight to Dr. Merlin's conclusion

that Mr. Ross could walk, sit, and stand than to Dr. Levine's contrary opinion, as is required by *Cotter*. 642 F.2d 706. Neither Dr. Levine's opinion, nor any other evidence, overwhelms the evidence relied on by the ALJ. *See Brewster*, 786 F.2d at 584 (citing *Kent*, 710 F.2d at 114). Thus, substantial evidence supports a finding that the infection of Mr. Ross's feet was not severe and so the ALJ was not required to compare it to a listed impairment at step three. *Sassone*, 165 Fed. Appx. at 959.

In making his decision that no impairment, or combination thereof, suffered by Mr. Ross was equivalent to a listed impairment the ALJ stated, "[n]o treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment." (Tr. 264.) The ALJ also stated that there was no evidence that any of Mr. Ross's impairments had been caused or aggravated by his obesity. (Tr. 269.) The ALJ noted that he gave particular scrutiny to Mr. Ross's conditions in light of "Listings 9.00, the Endocrine System; Listing 1.00, the Musculoskeletal System; and Listing 4.00 the Cardiovascular System." Again, an ALJ's determination that no impairment or impairments are equivalent to a listing may be supported by substantial evidence even where the ALJ does not indicate the listings to which he compared the claimant's impairments. *See Arroyo*, 82 Fed. Appx. at 768.

Even in light of all of Mr. Ross's impairments, we find that a reasonable mind could conclude that Mr. Ross suffered no impairments that were equivalent to those impairments that would have rendered him disabled *per se*. For example, if Mr. Ross succeeded in showing motor disorganization in his right arm, then he could show that he had a disability equivalent to § 9.08 of the Listing of Impairments by establishing another impairment that was equivalent to motor disorganization of a second limb. Mr. Ross and

his physician, Dr. Levine, suggest that Mr. Ross suffered from two other impairments with respect to his limbs, edema (Tr. 317) and fungal infection (Pl. 6; Tr. 316).  However, Dr. Merlin's examination of Mr. Ross revealed that he did not suffer from edema and that he could stand or walk for up to six hours in an eight-hour day despite the infection.  (Tr. 129-130.)  As such, a reasonable person could conclude that Mr. Ross's impairments did not equal § 9.08.  As there is no evidence that any of Mr. Ross's impairments equal a listing, the ALJ's decision that he was not disabled *per se* on the grounds of equaling a listing is supported by substantial evidence.

At the fourth step of the evaluation, the ALJ agreed with Dr. Fechner's assessment that Mr. Ross had the residual functional capacity to do light work.  (Tr. 268.)  The ALJ also found that Mr. Ross's RFC was limited from performing fine manipulations using either hand (Tr. 271).  In making this decision, the ALJ not only took into account Dr. Levine's opinion that Mr. Ross was limited by his inability to perform fine manipulations with the fingers of his right hand (Tr. 269) but also found Mr. Ross's left hand to be similarly impaired despite the only medical evidence of this being Dr. Fechner's observations during the hearing (Tr. 384-385).  Yet, as was stated above, the ALJ did not accept Dr. Levine's assessment that Mr. Ross did not have the capacity to sit, stand, or walk for more than an hour.  (Tr. 269.)  The ALJ found that Mr. Ross's past relevant work included employment as a substitute teacher.  (Tr.  269.)  The ALJ concluded that Mr. Ross would be able to perform this work based on Mr. Meola's assessment that a person of Mr. Ross's age with his skills, education, and RFC would be able to work as a substitute teacher.  (Tr. 270.)

Both Dr. Merlin's examination and Dr. Fechner's expert opinion support the ALJ's finding that Mr. Ross had the RFC to do light work, with the limitation that both hands are restricted from continuous and repetitive fine fingering manipulations.  Dr. Levine provided evidence that might support a finding that Mr. Ross had a more restricted RFC.  (Tr. 176.)  However, the ALJ adequately explained his reason for not giving great weight to Dr. Levine's opinion by stating that this opinion was inconsistent with the other medical evidence and with Ross's own description of his daily household activities.  (Tr. 268, 372-373.)  Mr. Ross agrees that he worked as a substitute teacher. (Pl. 3; Tr. 159.)  In determining what the vocational requirements of this teaching job were, the ALJ relied on Mr. Meola's assessment.  The ALJ gave three reasons for why he did not rely on Mr. Ross's testimony with respect to the requirements of the substitute teaching job.  First, Mr. Ross had a poor work record and had not been called in to teach for years before the date he alleges as the onset of his disability.  (Tr. 270.)  Second, Mr. Ross had impliedly asserted that he was not disabled when, in order to collect unemployment insurance, he had held out that he was "ready willing and able to work." (Tr. 270.)  Third,  Mr. Ross reported that he passed out "twice a day" only after the vocational expert stated that this could lead to satisfying a listing in the first hearing, whereas Ross previously stated he passed out "rarely."  (Tr. 270.)  Again, an ALJ has the discretion to evaluate the credibility of a claimant.  *LaCorte*, ALJ 678 F. Supp. at 83 (quoting *Brown v. Schweiker*, 562 F. Supp. at 287.)  Thus the ALJ adequately explained how he resolved conflicting evidence, and a reasonable person who reviewed all the evidence could conclude that Mr. Ross had the RFC to perform his PRW as a substitute

teacher.  Thus, the ALJ's decision at step four of the analysis is based on substantial evidence.

As the ALJ found that Mr. Ross was capable of performing his PRW, he determined that Mr. Ross was not disabled.  There was therefore no need for the ALJ to show, at step five of the analysis, that Mr. Ross could do other work.

As the ALJ's analysis at every stage was based on substantial evidence, the Court affirms the ALJ's decision.

Mr. Ross argues to no avail that the ALJ improperly failed to take into account § 11.00C of the Listing of Impairments in analyzing whether his alleged diabetic neuropathy satisfied any section of the Listing of Impairments.  (Pl. 18.)  Under § 9.00 of the Listing of Impairments, which governs endocrine disorders like diabetes, "[w]here involvement of other organ systems has occurred as a result of a primary endocrine disorder, these impairments should be evaluated according to the criteria under the appropriate sections."  Thus, if the ALJ had found that the impairment to Mr. Ross's right hand was the result of diabetic neuropathy, he would have been required to look to § 11.00C in making his determination as to whether Mr. Ross qualified as disabled under § 9.08.  But the ALJ found that the impairment to Mr. Ross's arm and hand were the result of tendinitis not neuropathy, so there was no need to take § 11.00C of the Listing of Impairments into account.  (Tr. 264.)  While the ALJ recognized that Dr. Kapoor had diagnosed Mr. Ross with diabetic neuropathy, he did so in a fill-in-the-blank style form.  (Tr. 198.)  As such, the ALJ was entitled to give this opinion less weight than Dr. Fechner's expert opinion, provided at the hearing, that the impairment to Mr. Ross's right

hand was the product of tendinitis.  *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993).

Likewise, Mr. Ross also argues to no avail that the ALJ failed to compare his cardiac condition to what he describes as "the only relevant listing," § 4.12. (Pl. 16.)  To meet the requirements of § 4.12, a claimant must show: "Chronic venous insufficiency of the lower extremity with incompetency or obstruction of the deep venous return, associated with superficial varicosities, extensive brawny edema, stasis dermatitis, and recurrent or persistent ulceration which has not healed following at least 3 months of prescribed medical or surgical therapy."  But there is no evidence in the record of venous insufficiency, cardiac incompetence, obstruction of deep venous return, varicose veins, stasis dermatitis, or any ulceration.  Thus, under *Sassone*, the ALJ is not required to determine whether or not such an impairment rendered Mr. Ross disabled *per se* at steps three of the analysis. 165 Fed. Appx. at 959.

**IV.    Conclusion**

For the above reasons, ALJ O'Leary's decision of November 14, 2005, is affirmed.  An appropriate Order follows.  This case is closed.

S/Susan D. Wigenton, U.S.D.J.

Orig:   Clerk
Cc:    Madeline Cox Arleo, U.S.M.J.
        Parties